**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY EDEN** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  21-5076** |
| | : | |
| **DEREK OBERLANDER, *et al.*** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                               **December 7, 2022**

The Commonwealth tried Jeffrey Eden for sexually assaulting two minor members of his family. The trial judge began trial with an opening jury instruction fully defining the Commonwealth's burden of proof beyond a reasonable doubt. The two minors testified. The trial judge provided closing instructions two days after the opening instructions in which she did not repeat the fulsome reasonable doubt charge. Mr. Eden's counsel did not object to the absence of a reasonable doubt charge in the closing instructions. The jury convicted. Mr. Eden appealed. Both the Pennsylvania Superior Court and Pennsylvania Supreme Court denied his appeals although vacating one conviction unrelated to our review today. Mr. Eden timely petitioned for habeas relief on a variety of grounds. Judge Reid timely issued a comprehensive Report and Recommendation.

Mr. Eden objects to Judge Reid's Report and Recommendation on two grounds: the trial judge erred in failing to provide a closing instruction on reasonable doubt and his counsel provided ineffective assistance by not objecting at trial to the absence of reasonable doubt instruction. We studied the record and Judge Reid's thorough analysis. Mr. Eden's claims concerning the absence of a reasonable doubt instruction during the closing instructions is waived since he did not raise the issue during trial and is otherwise without authority. Mr. Eden also fails to show a basis for us to find ineffective assistance of his counsel. We adopt and approve Judge Reid's

Recommendations, dismiss and deny Mr. Eden's Petition for habeas relief, and find no grounds for a certificate of appealability.

## I.    Background

Jeffrey Eden spent the night at a hotel with his twelve or thirteen year old brother-in-law, A.S. sometime between 2009 and 2010.[1] The two shared a bed.[2] A.S. awoke during the night to find Mr. Eden touching his penis.[3] Mr. Eden stopped once A.S. ejaculated.[4] A.S. told his school principal about the sexual abuse on March 2, 2011.[5] A.S. later met with a police officer and recounted the details of the incident.[6]

 A.S. later told an unidentified person Mr. Eden sexually abused him a second time.[7] A.S. slept at Mr. Eden's house about a year or two after the first incident and awoke during the night to Mr. Eden ripping off A.S.'s boxers and touching his penis until he ejaculated.[8] A.S. reported a third incident to a family court district attorney.[9] A.S. slept at Mr. Eden's house, at an unspecified date and time, and awoke to Mr. Eden performing oral sex on him.[10]

On June 2, 2011, A.S.'s sister, M.O., first told A.S. and then reported to the authorities Mr. Eden also sexually abused her at age eleven years old.[11] M.O. told police Mr. Eden would grope her when playing hide-and-seek and made sexual remarks about her body.[12] M.O. also reported an incident during the same timeframe where she woke up from a movie with Mr. Eden and found her underwear removed and her private area wet with something other than urine.[13]

### *The Commonwealth charges Mr. Eden.*

Police arrested Mr. Eden on August 12, 2011.[14] The Commonwealth charged him with unlawful contact with a minor, endangering the welfare of a child, corruption of the morals of a minor, indecent assault without consent of other, rape (forcible compulsion), involuntary deviate sexual intercourse, statutory sexual assault, and sexual assault related to A.S.[15] The

2

Commonwealth separately charged him with criminal solicitation to commit rape by forcible compulsion, criminal solicitation to commit statutory sexual assault, corruption of the morals of a minor, and indecent assault related to M.O.[16]

### A state court jury convicts Mr. Eden and the trial court imposes a sentence.

A jury trial began on June 23, 2014 in the Court of Common Pleas for Philadelphia County.[17] The trial judge's first-day instructions included her definition of reasonable doubt.[18] The trial judge stated:

> The charges brought against the defendant are accusations. They are not proof that a defendant is guilty.
>
> A fundamental principle of our law is that you must presume the defendant is innocent. This means that you are to accept that the mere fact that he is charged with a crime does not mean that he is guilty of it.
>
> He begins this case with a clean slate and he has no obligation to prove his innocence. Rather it is the Commonwealth must convince you that based on a fair consideration of all of the evidence that will be offered, each element of the offenses charged have been proven beyond a reasonable doubt.
>
> To succeed in this effort, the Commonwealth must convince you that based on a fair consideration of all of the evidence that will be offered, each element of the offenses charged have been proven beyond a reasonable doubt.
>
> A reasonable doubt is a doubt that would cause a reasonably careful[,] a sensible person[,] to pause, hesitate or refrain from acting upon a matter of the highest importance in his or her own affairs.
>
> A reasonable doubt must be a real doubt. It may not be an imagined one, nor a doubt manufactured to avoid carrying out an unpleasant duty.[19]

The evidence in the jury trial ended two days later.[20] A.S. and M.O. testified.[21] The trial judge gave a final charge to the jury two days after her opening instructions but did not re-define reasonable doubt.[22] The trial judge instead repeated to the jury Mr. Eden maintained the presumption of innocence "unless and until you conclude, based upon careful and impartial

consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt of the charges made against him."[23] The trial judge also repeated the Commonwealth had the burden to prove each element of every crime beyond a reasonable doubt.[24]

The jury convicted Mr. Eden on June 25, 2014 of two counts of corrupting a minor, and one count each of unlawful contact with a minor, rape by forcible compulsion, involuntary deviate sexual intercourse, statutory sexual assault, sexual assault, and indecent assault.[25] The jury acquitted Mr. Eden of one count each of criminal solicitation to commit rape by forcible compulsion and criminal solicitation to commit statutory sexual assault.[26] The trial court sentenced Mr. Eden to an aggregate term of incarceration between fifteen to thirty years on November 14, 2014.[27]

### *Mr. Eden appeals and seeks post-conviction collateral relief.*

Mr. Eden appealed his conviction to the Pennsylvania Superior Court.[28] He raised fifteen claims challenging, among other things, certain evidentiary rulings made by the trial court, the sufficiency of the evidence, the jury instructions given at the close of evidence, and the legality of his sentence.[29] Mr. Eden claimed the trial judge erred in failing to re-instruct the jury during the final charge on the definition of "reasonable doubt" and how reasonable doubt impacts the burden of proof as required by state and federal law which prejudiced Mr. Eden.[30] The Superior Court held Mr. Eden waived his claim because he failed to object to the jury charge at trial.[31] The Superior Court granted Mr. Eden relief on only one of his claims – arguing the trial court erred under *Alleyne v. United States* in sentencing him to the mandatory minimum on the charge of involuntary deviate sexual intercourse – but denied the rest of his claims.[32] The Superior Court affirmed Mr. Eden's conviction but vacated Mr. Eden's sentence for involuntary deviate sexual intercourse.[33]

Mr. Eden petitioned for post-conviction relief under Pennsylvania's Post-Conviction Relief Act on June 14, 2018 raising claims related to his trial counsel's effectiveness.[34] The post-conviction court dismissed Mr. Eden's petition without a hearing on December 5, 2019.[35]

Mr. Eden appealed to the Pennsylvania Superior Court arguing ineffectiveness of his trial counsel for (1) failing to seek dismissal of his charges because the Commonwealth did not file Bills of Information; (2) failing to object when the trial judge did not instruct the jury in the closing jury charge on the definition of reasonable doubt; and (3) failing to object when the trial judge improperly read the jury charge for corruption of the morals of a minor.[36] The Supreme Court agreed with Mr. Eden "it may have been preferable for the trial court to provide a definition of reasonable doubt during its closing instructions[,]" but held the trial judge "accurately defined reasonable doubt in its opening instruction to the jury."[37] It concluded Mr. Eden failed to establish the trial judge's failure to re-define reasonable doubt in the final charge to the jury prejudiced Mr. Eden in such a way where the outcome of trial would have been different but for his counsel's failure to object.[38] The Supreme Court affirmed the post-conviction's court denial of Mr. Eden's petition.[39] The Pennsylvania Supreme Court denied Mr. Eden's petition for allowance of appeal.[40]

### Mr. Eden seeks federal habeas relief.

Mr. Eden timely petitioned for habeas relief.[41] His counseled petition raises the same fifteen claims raised on his direct appeal and the three claims raised in his post-conviction petition challenging certain evidentiary rulings made by the trial judge, the sufficiency of the evidence, the final instructions read to the jury, the legality of his sentence, and the effectiveness of his trial counsel.[42] Two of Mr. Eden's claims stem from the trial judge's failure  to define "reasonable doubt" to the jury in her final charge at the close of evidence: (1) the trial judge failed to define "reasonable doubt" and how reasonable doubt impacts the burden of proof in the closing charge to

the jury which denied Mr. Eden of his due process rights and prejudiced him; and (2) his trial counsel provided ineffective assistance of counsel by failing to object to the final jury charge when the trial judge failed to re-define "reasonable doubt."[43] The Commonwealth opposes Mr. Eden's petition and requests we dismiss it with prejudice.[44] Mr. Eden filed a memorandum in support of his petition.[45] We referred Mr. Eden's counseled Petition to the Honorable Scott W. Reid for a Report and Recommendation.[46]

### *Judge Reid recommends we deny in part and dismiss in part the habeas petition.*

Judge Reid issued a detailed Report recommending we deny in part and dismiss in part Mr. Eden's Petition.[47] Judge Reid found Mr. Eden waived his challenge to the trial judge's failure to re-instruct the jury on the definition of "reasonable doubt" during the final charge and his claim procedurally defaulted on the basis of independent and adequate state procedural rules.[48] Judge Reid also found Mr. Eden not entitled to relief for his ineffective assistance of counsel claim for failing to object to the trial judge's closing jury charge which did not re-define reasonable doubt.[49] Judge Reid explained Mr. Eden failed to cite authority from Pennsylvania courts or our Court of Appeals requiring a judge re-instruct on reasonable doubt in closing jury instructions once given in opening instructions.[50] Judge Reid found nothing unreasonable with the Pennsylvania Superior Court's finding Mr. Eden suffered no prejudice as a result of his counsel's failure to object to the trial judge not re-defining reasonable doubt in the closing charge to the jury.[51] Judge Reid found no basis to issue Mr. Eden a certificate of appealability.[52]

## II.    Analysis

Mr. Eden now objects to Judge Reid's Report and Recommendation.[53] Mr. Eden focuses on the trial judge not defining reasonable doubt in her final charge to the jury and counsel not objecting to this failure, which Mr. Eden claims resulted in a denial of his due process rights.[54]

Mr. Eden largely rehashes his arguments raised in his memorandum in support of his habeas petition but casts them as objections to Judge Reid's Recommendation.[55] Mr. Eden objects to (1) Judge Reid's finding the Pennsylvania state courts did not unreasonably apply clearly established federal law when it found the trial judge's failure to re-define reasonable doubt in the closing jury charge did not deprive Mr. Eden of his due process rights, and (2) Judge Reid's finding Mr. Eden suffered no prejudice when the jury did not receive a final instruction on reasonable doubt.[56] Mr. Eden does not object to Judge Reid's analysis on any other basis. After studying the record, Judge Reid's thoughtful analysis, and Mr. Eden's objections, we adopt Judge Reid's Report and Recommendation, reject Mr. Eden's claims, and deny his petition with prejudice.

Before we may grant a habeas petition to a person in custody from a state court judgment, Congress, through the Antiterrorism and Effective Death Penalty Act of 1996, requires incarcerated persons "exhaust[] the remedies available in the courts of the State."[57] If we find the claim has been adjudicated on the merits by the state court, we may grant a petition for habeas relief only if: "(1) the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[58] As the Supreme Court instructs, this is a "highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt."[59]

We may designate a magistrate judge to make proposed findings and recommendations on petitions for post-conviction relief.[60] Mr. Eden may then object and must "specifically identify the

portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."[61]

We review *de novo* "those portions of the report or specified proposed findings or recommendations to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[62] Objections "merely rehash[ing] an argument presented to and considered by a magistrate judge are not entitled to *de novo* review."[63] We overrule Mr. Eden's two objections and find his claims for habeas relief lack merit. We approve and adopt Judge Reid's Report and Recommendations.

### A.     We overrule Mr. Eden's objections related to his ineffectiveness of his counsel claim.

Mr. Eden objects to Judge Reid's denial of his ineffective assistance of counsel claim based on Mr. Eden's counsel's failure to object to the trial court's closing jury charge which did not include a definition of reasonable doubt.[64] Mr. Eden argues: (1) the Pennsylvania Superior Court unreasonably applied the law when it denied Mr. Eden's ineffective assistance of counsel claim, and (2) he suffered prejudice when his trial counsel failed to object to the trial judge's closing instruction.[65]

Mr. Eden argued in state court and repeats now his trial counsel rendered ineffective assistance of counsel by not objecting to the final jury charge which did not include a definition of reasonable doubt.[66] The post-conviction court rejected this claim on the merits and the Superior Court affirmed this finding under Pennsylvania law.[67]

Because Mr. Eden raised this same claim in his post-conviction petition and since the Superior Court rejected it on the merits, we conduct our review under section 2254(d) allowing us to grant relief if (1) the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) it "was

based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[68]

We apply the Supreme Court's seminal *Strickland v. Washington* standard in evaluating the effectiveness of Mr. Eden's counsel.[69] Mr. Eden must show his trial counsel performed "deficient[ly]" and thereby prejudiced him.[70] Counsel's performance prejudices Mr. Eden if the severity of the errors "deprive [him] of a fair trial[.]"[71] Mr. Eden bears the burden of demonstrating "but for counsel's [ ] errors" there existed a "reasonable probability" the underlying lawsuit would have been decided differently.[72] The strength of the evidentiary record at trial affects the merits of the prejudice prong of the *Strickland* test.[73] But "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."[74]

The Superior Court did not apply a law "contrary to" the controlling Supreme Court law on ineffective assistance of counsel challenges.[75] The Superior Court, instead, agreed with the post-conviction court's finding the trial judge's instructions, when read in their entirety, clearly and accurately instructed the jury on reasonable doubt.[76] So the Superior Court reasoned Mr. Eden's counsel had no basis to object to the charge and Mr. Eden could not show prejudice as required for relief on a claim of ineffective assistance of counsel.[77] We agree.

Under the Fourteenth Amendment's Due Process Clause, "when an individual is accused of a crime, the jury must convict that person 'upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'"[78] The reasonable doubt standard "is indispensable in 'reducing the risk of convictions resting on factual error,' and it 'provides concrete substance for the presumption of innocence.'"[79] "[A]ny instructions a judge gives to a jury on what it means to find someone guilty beyond a reasonable doubt must 'correctly convey the concept of reasonable doubt to the jury.'"[80] "Jury instructions violate due process when 'there is a reasonable

likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [reasonable doubt] standard.'"[81]

The Pennsylvania Supreme Court "require[s] [ ] the jury be given a positive instruction fully and accurately defining reasonable doubt."[82] But, and as highlighted by Judge Reid, Mr. Eden provides no authority from Pennsylvania courts or from our Court of Appeals requiring a trial judge instruct the jury on reasonable doubt in its closing charge rather than its opening charge to the jury. The Court of Appeals for the Fifth Circuit nearly forty years ago in *United States v. Ruppel* referenced "clear and unmistakable authority that a federal trial judge *in this circuit* instruct the jury on the presumption of innocence at the close of the case[.]"[83] But the Court of Appeals for the Fifth Circuit found even with this "clear and unmistakable authority" the trial judge's failure to re-instruct the jury on the presumption of innocence at the close of trial did not warrant a new trial because the trial judge charged the jury on the presumption of innocence at the beginning of trial (eleven days earlier), referred to those instructions before his final charge, and counsel referred to the presumption of innocence during his closing argument.[84] The Court of Appeals for the Fourth Circuit has taken a different approach and has "never required a district court to define reasonable doubt to a jury" and "although the district court may define reasonable doubt to a jury upon request, the district court is not required to do so."[85]

"[I]n cases where a reasonable doubt instruction is at issue . . . [t]he inquiry is not [ ] whether a particular word or phrase is used, but rather, when *taken as a whole*, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."[86] Our facts are distinct from *Brown v. Kauffman*, where Judge Slomsky found the trial judge's reasonable doubt jury instruction violated due process and defense counsel's failure to object to it deprived Mr. Brown of effective assistance of counsel.[87] Judge Slomsky reviewed a situation where the trial judge instructed the

jury to equate reasonable doubt with whether to undertake a surgical procedure for a loved one.[88] By instructing the jury using this analogy the trial judge created a "'reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt."[89] Judge Slomsky found Mr. Brown prejudiced by this "unconstitutionally distorted" instruction because "a reasonable juror could erroneously resolve doubts in favor of the Commonwealth" and there existed a "reasonable probability" the outcome would have been different had counsel objected and requested a proper jury instruction.[90]

Our facts are also distinct from those Judge Pratter faced in *Moore v. Rivello*, where she held "the faulty reasonable doubt instruction coupled with the weak evidence presents the likely possibility that [petitioner] was convicted by a jury using a burden of proof standard allowing much more doubt than is permitted by the Due Process Clause."[91] Judge Pratter found the reasonable doubt instruction unconstitutional – which used a similar analogy to the problematic instruction in *Brown* – and counsel's failure to object to the instruction along with the weak evidence introduced at trial caused prejudice.[92]

We do not face the same distorted instructions reviewed by Judges Slomsky and Pratter. As recognized by the Pennsylvania Superior Court, the trial judge's instruction on reasonable doubt – although given at the start at trial – closely followed the Pennsylvania Suggested Standard Criminal Jury Instructions.[93] Although the Superior Court recognized "it may have been preferable for the trial court to provide a definition of reasonable doubt during its closing instructions" it found "the trial court accurately defined reasonable doubt in its opening instruction to the jury."[94] We agree. We prefer trial judges provide the reasonable doubt instruction before discharging the jury in closing instructions, but due process does not mandate this process when the trial judge gave the reasonable doubt instruction during the opening instructions two days earlier.

We must further deny the claim because Mr. Eden cannot show prejudice under *Strickland* even if he could somehow show his counsel performed deficiently by not objecting to the closing jury charge.[95] The trial judge gave the opening charge and defined reasonable doubt two days before the closing charge. And the trial judge repeated to the jury at the close of evidence Mr. Eden maintained the presumption of innocence "unless and until you conclude, based upon careful and impartial consideration of the evidence, that the Commonwealth has proven him guilty beyond a reasonable doubt of the charges made against him."[96] At the close of evidence, the trial judge again repeated the Commonwealth bore the burden to prove each element of every crime beyond a reasonable doubt.[97]

Unlike Judge Slomsky's analysis in *Brown*, the opening instruction accurately described reasonable doubt. We are not faced with an "unconstitutionally distorted" instruction. And distinct from Judge Pratter's review in *Moore* where counsel's failure to object to the unconstitutional instruction coupled with the weak evidence introduced at trial caused prejudice, here both M.O. and A.S. testified at trial, which the jury found convincing.[98] As the Superior Court found "[t]he record reflects [ ] the jury chose to credit the testimony of the Commonwealth's witnesses and chose to reject the defense witnesses."[99] Like the Court of Appeals for the Fifth Circuit in *Ruppel*, we are unwilling to believe the jury retired to deliberate two days after hearing the trial judge's definition of reasonable doubt less than fully aware of the definition of reasonable doubt. The Superior Court's conclusion Mr. Eden suffered no prejudice when his counsel failed to object to the lack of a reasonable doubt definition in the closing instruction is not unreasonable.

We adopt Judge Reid's Report and Recommendation and reject Mr. Eden's claim of ineffective assistance of counsel based on trial counsel's failure to object to the lack of a reasonable doubt definition in the closing charge to the jury.

**B.      We dismiss Mr. Eden's procedurally defaulted claim.**

It is unclear whether Mr. Eden's broad arguments rehashing how the trial judge's failure to re-instruct the jury on probable cause violated Mr. Eden's due process rights is a challenge to Judge Reid's finding the due process claim is procedurally defaulted based on an independent and adequate state procedural rule. But we agree with Judge Reid and find Mr. Eden's due process claim procedurally defaulted.

Mr. Eden must first argue his claims in state court before he can raise them in a section 2254 petition because Congress, through the Antiterrorism and Effective Death Penalty Act of 1996, requires prisoners to have "exhausted the remedies available in the courts of the State."[100] "In Pennsylvania, petitioners afford the state courts that opportunity by fairly presenting their claims to the Superior Court, either on direct review or on appeal of a petition under Pennsylvania's Post Conviction Relief Act[.]"[101] "To fairly present a claim, a petitioner must introduce both the legal theory and its underlying factual support."[102] Where a petitioner fails to exhaust his claims in state court, the claims are procedurally defaulted, and we may not review them.[103]

But we may review procedurally defaulted claims if Mr. Eden can show (1) "'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation'" or (2) the "fundamental miscarriage of justice exception" restricted "to a severely confined category[ ] of cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [Mr. Eden]'"[104]

To establish "cause," Mr. Eden must "show [ ] some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."[105] "A factor is external to the defense if it 'cannot fairly be attributed to'" Mr. Eden.[106] To show "actual prejudice," Mr. Eden "must show 'not merely [ ] the errors at . . . trial created a *possibility* of prejudice, but [ ] they

worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'"[107] To establish a "fundamental miscarriage of justice," Mr. Eden must show actual innocence.[108]

Judge Reid correctly explained the Pennsylvania Superior Court found Mr. Eden's due process claim waived because Mr. Eden failed to object to the final jury charge at trial.[109] Mr. Eden has not met his burden to excuse this procedural default. As we explain in detail above, Mr. Eden cannot show the trial judge's final charge prejudiced him to excuse his procedural default.[110] And Mr. Eden presents no new evidence of his actual innocence.

We agree with Judge Reid's Report and Recommendation and decline to excuse the procedural default of Mr. Eden's due process claim as to the trial judge's final jury charge because Mr. Eden fails to show prejudice or his actual innocence.

## C.    We deny a certificate of appealability.

We decline to issue a certificate of appealability. "Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court."[111] We may issue a certificate of appealability if "the applicant has made a substantial showing of the denial of a constitutional right."[112] Mr. Eden can "satisf[y] this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[113]

We decline to issue a certificate of appealability. Given the standard we apply today to habeas challenges to state trial judge's final charge and ineffectiveness of counsel, we cannot find

jurists of reason could disagree with our reasoning in denying the petition. Mr. Eden has not met his burden in showing a reasonable jurist would disagree with the denial of his petition.

## III.    Conclusion

We overrule Mr. Eden's objections and find his claims for habeas relief lack merit. We approve and adopt Judge Reid's Report and Recommendation. We deny and dismiss Mr. Eden's petition for a writ of habeas corpus. We deny a certificate of appealability.

---

[1] *Com. v. Eden*, No. 1401-2015, 2017 WL 2261609, at *1 (Pa. Super. Ct. May 23, 2017). We base our analysis on the trial court's summary of the evidence. *Id.* We may not revisit or alter the facts adduced at trial.

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *Id.*

[7] *Id.* The record reflect A.S. told this person of the second incident on November 6, 2011. *Id.*

[8] *Id.*

[9] *Id.* at *2.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] ECF Doc. No. 16 at 3.

[16] *Id.*

[17] *Eden*, 2017 WL 2261609, at *2.

[18] *Com. v. Eden*, 260 A.3d 169, 2021 WL 3183693, at *5 (Pa. Super. Ct.), *appeal denied*, 267 A.3d 489 (Pa. 2021).

[19] *Id*. (citing N.T. Trial, 6/23/14 at 14–15).

[20] *Id*.

[21] *Eden*, 2017 WL 2261609 at *6–9.

[22] *Eden*, 2021 WL 3183693 at *5.

[23] *Id*. (citing N.T. Trial, 6/25/14 at 8–9).

[24] *Id*. (citing N.T. Trial, 6/25/14 at 17–24).

[25] *Eden*, 2017 WL 2261609, at *2.

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] *Id*. at *2–4.

[30] *Id*. at *3.

[31] *Id*. at *11. The Pennsylvania Superior Court found Mr. Eden failed to comply with Pennsylvania Rule of Appellate Procedure 2117(c), which requires he prove he preserved each claim for appeal by including a "statement of place of raising or preservation of [his] issues[.]" *Id*. at *5. Although the Superior Court found Mr. Eden's claim waived because of his failure to object to the closing charge, Mr. Eden raised this claim two years earlier before the trial judge in his direct appeal and the trial judge addressed this claim on the merits. *See Com. v. Eden*, CP-51-CR-0012657-2011 (Nov. 2, 2015 Phila. Cnty. Com. Pl.). The trial judge found the claim meritless because the trial judge properly instructed the jury on the definition of reasonable doubt. *Id*.

[32] *Id*. at *15–16.  The Supreme Court in *Alleyne* held "facts that increase mandatory minimum sentences must be submitted to the jury" and must be found beyond a reasonable doubt. *Id*. at *15 (citing *Alleyne v. United States*, 570 U.S. 99, 116 (2013)). Although the Superior Court granted Mr. Eden's *Alleyne* claim and vacated his sentence for involuntary deviate sexual intercourse, the Superior Court held a remand for resentencing unnecessary since the trial court sentenced Mr. Eden to a concurrent term for incarceration. *Id*. at *16.

[33] *Id*. at *16.

[34] *Eden*, 2021 WL 3183693, at *1.

[35] *Id*.

---

[36] *Id*. at *1–2.

[37] *Id*. at *8.

[38] *Id*.

[39] *Id.* at *2–12. The Superior Court affirmed the post-conviction court's finding Mr. Eden could not established he suffered actual prejudice based on his trial counsel's failure to seek dismissal of his charges based on the Commonwealth's failure to file Bills of Information. *Id*. at *5. And the Superior Court held the trial court erred by instructing the jury on the subsection of the corruption of minors charge not applicable to Mr. Eden's case. *Id*. at *11. But Mr. Eden could not establish prejudice based on the trial court's erroneous instruction on the corruption of minors charge. *Id*.

[40] *Com. v. Eden*, 267 A.3d 489 (Pa. 2021).

[41] ECF Doc. No. 1.

[42] *Id*. at 18–20.

[43] *Id*.

[44] ECF Doc. No. 13.

[45] ECF Doc. No. 14.

[46] ECF Doc. No. 6.

[47] ECF Doc. No. 15.

[48] *Id*. at 10.

[49] *Id*. at 17–19.

[50] *Id*.

[51] *Id*.

[52] *Id*. at 22.

[53] ECF Doc. No. 16.

[54] *Id*. at 8.

[55] *See* ECF Doc. No. 14; *see also* ECF Doc. No. 16.

[56] ECF Doc. No. 16 at 20–22.

[57] 28 U.S.C. § 2254(b)(1)(A).

[58] *Terry v. Ramson*, No. 20-3521, 2021 WL 1394306, at *2 (E.D. Pa. Mar. 15, 2021), *report and recommendation adopted*, No. 20-3521, 2021 WL 1387666 (E.D. Pa. Apr. 13, 2021) (quoting 28 U.S.C. § 2254(d)(1)–(2)) (internal quotations omitted)).

[59] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

[60] *See* 28 U.S.C. § 636(b)(1)(B); E.D. Pa. Civ. R. 72.1.

[61] E.D. Pa. Civ. R. 72.1.IV(b).

[62] 28 U.S.C. § 636(b)(1).

[63] *Rodirequez v. SCI-Mercer*, No. 17-4294, 2019 WL 1559561, at *4 (E.D. Pa. Apr. 9, 2019) (internal citations omitted) (emphasis added).

[64] ECF Doc. No. 16 at 20–22.

[65] *Id.*

[66] *See Eden*, 2021 WL 3183693, at *5–8.

[67] *Id.*

[68] 28 U.S.C. § 2254(d)(2).

[69] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[70] *Id.*

[71] *Id.*

[72] *Id.* at 694.

[73] *Id.* at 699.

[74] *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

[75] *See Eden*, 2021 WL 3183693, at *5–8 ("[W]here a petitioner claims that counsel was ineffective for failing to object to a structural error, the petitioner must establish actual prejudice.").

[76] *Id.* at *8.

[77] *Id.* at *5–8.

[78] *Harrison v. Att'y Gen. of Pennsylvania*, 795 F. App'x 103, 106 (3d Cir. 2019) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

[79] *Com. v. Drummond*, No. 28-2021, 2022 WL 17171610, at *6 (Pa. Nov. 23, 2022) (quoting *In re Winship*, 397 U.S. at 364).

[80] *Harrison*, 795 F. App'x at 106 (quoting *Victor v. Nebraska*, 511 U.S. 1, 5 (1994)).

[81] *Id.* (quoting *Victor*, 511 U.S. at 6).

[82] *Com. v. Young*, 317 A.2d 258, 262 (Pa. 1974).

[83] *United States v. Ruppel*, 666 F.2d 261, 274 (5th Cir. 1982) (emphasis added).

[84] *Id.* at 274–75.

[85] *United States v. Walton*, 207 F.3d 694, 695–99 (4th Cir. 2000) (en banc) (recognizing "[t]here is no constitutional requirement to define reasonable doubt to a jury"); *see also Gaines v. Kelly*, 202 F.3d 598, 605 (2d Cir. 2000) ("[A] trial court may choose freely either to define reasonable doubt or to refrain from defining it" . . . "if the trial court chooses to define it, then the instructions, taken as a whole, . . . [must] correctly conve[y] the concept of reasonable doubt to the jury.") (cleaned up).

[86] *Laird v. Horn*, 159 F. Supp. 2d 58, 92 (E.D. Pa. 2001), *aff'd and remanded*, 414 F.3d 419 (3d Cir. 2005) (quoting *Victor*, 511 U.S. at 5) (cleaned up) (emphasis added).

[87] *Brown v. Kauffman*, 425 F. Supp. 3d 395, 410–13 (E.D. Pa. 2019).

[88] *Id.* at 405–06 ("I find it helpful to think about reasonable doubt in this way . . . If you were told that your precious one had a life-threatening medical condition, and that the best protocol for that life-threatening medical condition was a surgery, very likely, you are going to ask for a second opinion. . . If you are like me, you are going to start researching. Well, what is this illness? What are the protocols for treating this illness? . . . If you go forward with the surgery for your loved one, it is not because you moved beyond all doubt. There are no guarantees. If you go forward, it is because you have moved beyond all reasonable doubt.").

[89] *Id.* at 410 (internal citations omitted).

[90] *Id.* at 406, 413.

[91] *Moore v. Rivello*, No. 20-838, 2022 WL 1749250, at *22 (E.D. Pa. May 31, 2022).

[92] *Id.* *6-7, 13-22.

[93] *See Eden*, 2021 WL 3183693, at *8; *see also* Pa. SSJI (Crim), § 7.01. "[An] example of an objective reasonable doubt instruction, one that 'has not been successfully attacked on due process grounds[,]' . . . is the primary recommended instruction found in the Pennsylvania Standard Suggested Jury Instruction Manual." *Drummond*, 2022 WL 17171610, at *11 (citing Pa. SSJI (Crim), § 7.01).

[94] *Eden*, 2021 WL 3183693, at *8.

19

---

[95] *Baxter v. Superintendent Coal Twp*. SCI, 998 F.3d 542, 549 (3d Cir. 2021), ce*rt. denied sub nom. Baxter v. McGinley*, 142 S. Ct. 1130 (2022) ("[C]ounsel's failure to object to the reasonable doubt instruction did not prejudice [petitioner], and thus he cannot show he was deprived of effective assistance of counsel.").

[96] *See Eden*, 2021 WL 3183693, at *5 (citing N.T. Trial, 6/25/14 at 8–9).

[97] *Id.* (citing N.T. Trial, 6/25/14 at 17–24).

[98] *Eden*, 2017 WL 2261609 at *6–9.

[99] *Id.* at *10.

[100] *Leyva v. Williams*, 504 F.3d 357, 365 (3d Cir. 2007) (quoting 28 U.S.C. § 2254(b)(1)(A)).

[101] *Rodland v. Superintendent of SCI Houtzdale*, No. 18-1892, 2020 WL 7385089, at *2 (3d Cir. Dec. 16, 2020) (citing *Lambert v. Blackwell*, 387 F.3d 210, 232–34 (3d Cir. 2004)).

[102] *Id*. (citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

[103] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *see also Greene v. Superintendent Smithfield SCI*, 882 F.3d 443, 449 (3d Cir. 2018) ("[A] federal court may not review federal claims that were procedurally defaulted in state court . . . ." (alterations in original) (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017))).

[104] *See Greene*, 882 F.3d at 499, n. 8 (alteration in original) (internal quotation marks omitted) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).

[105] *Davila*, 137 S. Ct. at 2065 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

[106] *Id*. (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991)).

[107] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

[108] *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[109] ECF Doc. No. 15 at 10.

[110] *See United States v. Kale*, No. 12-6669, 2013 WL 2475564, at *3, n. 4 (E.D. Pa. June 7, 2013) ("To the extent [petitioner] asserts an independent claim for relief on the ground that the jury instructions on reasonable doubt violated the Fifth Amendment [dur process rights], that claim is procedurally defaulted because he 'neglected to raise [it] on direct appeal' . . .[and] [b]ecause this ground for relief is meritless, [counsel's] failure to raise it on direct appeal does not constitute cause and prejudice that would excuse his procedural default.").

[111] 28 U.S.C. § 2253(c)(1)(A).

[112] 28 U.S.C. § 2253(c)(2).

[113] *Miller-El v. Cockrell*, 537 U.S. 322, 323 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).